(C. D. 1640)

NORMAN POLKINHORN *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 26, 1954)

*Clifton & Mack* (*Clarence Clifton* and *John B. Mack* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon*, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This is a protest against the collector's assessment of duty on 700 bales of cotton, imported from Mexico on or about December 19, 1951, at 3½ cents per pound under paragraph 783 of the Tariff Act of 1930, as modified by the' Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, and the President's proclamation of September 18, 1951, T. D. 52827, as cotton, having a staple 1⅛ inches or more but under $1^{11}/_{16}$ inches in length. It is claimed that the merchandise is short staple cotton, according to the United States Government Official Standards, has a length of less than 1⅛ inches, and is not dutiable under paragraph 783, as modified. The protest claims that the merchandise is entitled to free entry under the President's proclamation of September 5, 1939 [apparently T. D. 49956, which provides quotas for cotton and cotton waste], but at the trial and in the brief reference was made to paragraph 1662 of the Tariff Act of 1930, which provides for free entry for cotton, not specially provided for. No question has been raised as to the sufficiency of the protest.

The pertinent provisions of the tariff act and its modifications are as follows:

PAR. 783 [as modified by the Torquay Protocol, T. D. 52739, and T. D. 52827]:
Cotton:
Having a staple 1⅛ or more but under $1^{11}/_{16}$ inches long_____3½¢ per lb.

\*        \*        \*        \*        \*        \*        \*

Par. 1662 [Tariff Act of 1930]. Cotton, not specially provided for, and cotton waste. [Free.]

The involved merchandise consists of 700 bales of irrigated cotton out of a total of 1,400 bales purchased from Mercantil Mexicana, S. A., Mexicali, Mexico, and imported by Cook & Co., Inc., of Memphis, Tenn., through its importer, Norman Polkinhorn (the plaintiff herein). The merchandise was imported at the port of Calexico, Calif., on December 19, 1951, and entered for consumption on January 29, 1952. The record shows that the merchandise was thereafter sold to Bibb Manufacturing Co. of Macon, Ga., in three lots on February 20, 1952, February 21, 1952, and July 16, 1952, respectively.

The only issue involved herein is the correct length of the staple of the imported cotton. In support of the position that the cotton in question was less than 1⅛ inches long, plaintiff called James A. Taylor, Edward W. Cook, and George S. Knapp, Jr., all of Cook & Co., Inc.; T. J. Flake, a cotton merchant and classer of Memphis, Tenn.; and H. C. Slade of the United States Department of Agriculture. Defendant called Harold C. Cornell, examiner of merchandise at the port of Boston.

According to Mr. Slade, the staple length of cotton is "the normal length by measurement without regard to quality or value of a typical portion of the fibers under a relative humidity of 65 per cent and temperature of 70 degrees." The witnesses agreed that the typical portion of fiber is obtained by pulling the cotton, in accordance with a method described in a Department of Agriculture bulletin, quoted in *United States* v. *General Rubber Co.*, 22 C. C. P. A. (Customs) 308, T. D. 47350. The bulletin states that, after the pull is made, the fibers are to be placed on a horizontal surface with a black background, the ends blocked off, and the distance between the blocked-off ends measured. Each of the witnesses stated that he had made his pulls, in accordance with the method described in the Department of Agriculture bulletin, and that the room where the work was done had a temperature of about 70 degrees Fahrenheit and a humidity of about 65 percent. Some of the witnesses measured the pull by ocular examination only, and some of them used a ruler. In *United States* v. *General Rubber Co.*, *supra*, it was held that, in determining the staple length of cotton, it was proper to use a rule to measure the blocked-off portion of the pull and that any estimation or comparison by the use of the unaided eye, which produced a different result from actual measurement, was incorrect.

According to the evidence presented, samples of the involved merchandise were examined, and the staple length of the cotton was determined on five different occasions with varying results.

The first examination and determination of staple length was made by Mr. Cook and Mr. Knapp in January 1952 from samples out of the 700 bales which they received from Calexico shortly after importation.

Mr. Cook, who said he has been in the cotton business for about 11 years and has spent a considerable time in the cotton room [where staple length is determined], testified that he measured the length of the pulls he made from the 700 samples by the visual method and did not find any 1⅛ inches or more in length. He said that the longest staple measured 1³²⁄₃₂ inches, that is, ¹⁄₃₂ short of 1⅛ inches, but the bulk was 1¹⁄₁₆ inches long. Mr. Knapp, who has been in the cotton business since 1931 and in the cotton room since 1936, agreed that none of the cotton classed from the samples had a staple of 1⅛ inches or more in length.

The second measurement of this cotton was made by defendant's witness, Mr. Cornell, on April 24 to 30, 1952, from samples which were apparently shipped by customs officials first to New York and then to Boston. Mr. Cornell testified that he has been examiner of merchandise at Boston for 22 years and has been finding the staple length of cotton for 43 to 45 years. He always uses the rule method of measurement. In the instant case, he found none of the samples under 1⅛ inches in length. He said that a different measurement can be obtained from a different portion of a bale, because cotton is not uniform throughout the bale, and that when the cotton on one side has a longer staple, duty is assessed on the long side. When he classed the instant merchandise, he took samples from each side of the bales as to the first 10 bales.

Subsequently, on request of the importer, the samples were sent to the Appeal Board of Review Examiners, United States Department of Agriculture, Production and Marketing Administration, Cotton Branch, in Washington, D. C., where Mr. Slade examined them. Mr. Slade testified that he has had experience in the cotton industry for 45 years and has been in the Department of Agriculture for 38 years. He is at present chief of the Standardization and Appeals Section of the Division of Cotton Marketing, chairman of the Appeal Board of Review Examiners, and chairman of the Board of Cotton Examiners at Washington. The Government conceded that Mr. Slade is one of the foremost authorities on the pulling and stapling of cotton.

Mr. Slade testified that he determined the staple length of the cotton in the 700 samples in committee with another man as an official action. He said that he used the standard method in arriving at the pull and staple length but did not use the rule. He compared the pull against official standard staple types and did not find any equal to 1⅛ inches or more in length. He stated that, in his experience, measurement by visual comparison does not differ greatly from measurement by rule and that any variance would be ¹⁄₃₂ to ¹⁄₁₆ of an inch.

After Mr. Slade finished his examination, he returned the samples to Boston, where Mr. Cornell restapled 150 samples and found them

all over 1⅛ inches in length. Mr. Cornell then packed the samples in bags and shipped them to San Diego.

In October 1953, the samples were sent to Memphis, where they were stapled by Mr. Flake and Mr. Knapp. Mr. Flake testified that he has been in the cotton business since 1919 and that he classes about 100,000 bales of cotton a year. He is a member of the Board of Arbitration for the Memphis Cotton Exchange, chairman of the Grade and Staple Committee of the Southern Cotton Shippers Association, and on the Arbitration Review Board for the American Cotton Shippers Association. He examined the samples of the within merchandise at the request of the Memphis Cotton Exchange, by whom he was paid. He was assisted by Mr. Knapp of Cook & Co., Inc.

Mr. Flake testified that he usually determines the staple length of cotton by visual examination, but he has done some classing with a rule. In his experience, the results are the same 90 to 98 percent of the time. He said that in the instant case he was told it would be better to use the rule method, which he did. After making the pull, he judged it first with his eye and then laid it on the rule. Where the results were different, he took the rule measurement. Before measuring, he occasionally blocked off the ends, but, in any event, he measured the body of the cotton, not the long ends. He found none of the samples contained cotton with a staple length as long as 1⅛ inches. The results of his classification were recorded and are contained in plaintiff's collective exhibit 8.

Mr. Flake stated that there was sufficient cotton in the samples when he received them to obtain the staple length and that there was enough left for five more people to do so. He added that the staple length of cotton does not vary as a result of age, but an accurate measurement can be obtained if the cotton is subjected to the proper temperature and humidity. He said that there might be a variance in results obtained by two competent classers but it did not occur often and amounted to no more than 1⁄32 of an inch.

Mr. Knapp, who assisted Mr. Flake, testified that his pulls were measured by visual examination but that Mr. Flake's were determined by the rule. Both of them looked at the rule and agreed on the measurement, which Mr. Knapp then recorded on plaintiff's collective exhibit 7. (According to Mr. Flake, Mr. Knapp copied plaintiff's collective exhibit 7 from plaintiff's collective exhibit 8.) Mr. Knapp said that most of the results by visual examination and by the rule were the same, but only the figures obtained with the use of the rule were listed. Neither he nor Mr. Flake found any sample to be 1⅛ inches or more in length.

In addition to the evidence as to the stapling of the samples, plaintiff introduced testimony to the effect that the merchandise was pur-

chased by Cook & Co., Inc. "under description, which was middling or better; an inch or longer, but no longer than an inch and a sixteenth" and was sold as cotton having a staple of 1 inch. Mr. Cook stated that there was a difference in price between cotton having a staple of 1 inch and that having a staple of 1⅛ inches of $10 a bale in January and February 1952, and of $12.50 a bale in July 1952. Mr. Flake said that the difference on the date of trial (October 28, 1953) was $5.55 a bale. Mr. Cook testified, in addition, that he has been in Mexicali any number of times and has never purchased cotton grown there which he knew to have a staple length of 1⅛ inches or more.

The issue before us concerns the actual staple length of the imported cotton, not what the seller or purchaser thought it to have been. Several determinations of staple length were made at different times and by different persons, in three of which the length was found to be under 1⅛ inches and in two (made by the same person) it was found to be 1⅛ inches or over. The witnesses had had years of experience in classing cotton and were well qualified, the samples used were of sufficient size, and the required conditions of temperature and humidity prevailed where the examinations were made. Two of the witnesses used the rule method of measurement (which has been held to be more accurate), but contradictory results were obtained. One of these two, Mr. Flake, stated that he physically blocked off the ends of the pull only occasionally, but that his measurements were of the body of the cotton. Mr. Cornell said he pulled the cotton, in accordance with the method described in *United States* v. *General Rubber Co.*, *supra*, and that he stapled it by the rule. In a demonstration in the courtroom, he blocked off the ends with a ruler before measuring the pull. Whether he did so in stapling the imported cotton does not appear.

Tabulations showing the results obtained by Mr. Flake [1] and Mr. Slade in stapling each sample are before us (plaintiff's collective exhibits 8 and 9, respectively). The staple lengths ascertained separately by these witnesses were 1¹⁄₃₂, 1¹⁄₁₆, and 1³⁄₃₂ inches (with one or two at 1 inch). Mr. Slade found the majority of the samples to have a staple length of 1¹⁄₁₆ inches. Mr. Flake's results show the greater part of the samples examined to be either 1¹⁄₁₆ inches or 1¹⁄₃₂ inches in length. While Mr. Flake used the rule method and Mr. Slade did not, a random comparison of the tabulations of their results shows that what variances there were amounted to only ¹⁄₃₂ of an inch. In addition, Mr. Cook testified that the bulk of the cotton he stapled was 1¹⁄₁₆ inches long with only a very few samples measuring 1³⁄₃₂ inches.

No tabulation of the results obtained by Mr. Cornell was offered in evidence, but it is obvious that, since he found all of the samples to

---

[1] Since Mr. Knapp's results were the same as Mr. Flake's and may have been a copy thereof, they will not be considered further.

have staple lengths of 1⅛ inches or more, his figures must have varied from those of the other witnesses by at least 1 to 3 thirty-seconds of an inch.

After a careful study of the record presented, we conclude that the weight of the evidence establishes that the imported merchandise had a staple length of less than 1⅛ inches. It is, therefore, entitled to free entry under paragraph 1662 of the Tariff Act of 1930, as cotton, not specially provided for. The protest is sustained and judgment will be rendered for the plaintiff.